**Kevin SCHAEDLER, Appellant,**

v.

**ROCKWELL GRAPHIC SYSTEMS, INC., and Crosfield–Ebway, Inc., Respondents.**

**No. WD 43722.**

Missouri Court of Appeals, Western District.

July 30, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1991.

Application to Transfer Denied Nov. 19, 1991.

**500**

James W. Jeans, Sr., and James W. Jeans, Kirken & King, Kansas City, for appellant.

Joseph A. Sherman and James T. Thompson, Sherman, Taff & Bangert, P.C., Kansas City, for respondent Crosfield–Ebway, Inc.

James W. Benjamin and Barbara F. Corbin, Field, Gentry & Benjamin, Kansas City, for respondent Rockwell Graphic Systems, Inc.

Before KENNEDY, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Kevin Schaedler brought a products liability action against Rockwell Graphic Systems, Inc., the seller of a press assembly, and Crosfield–Ebway, Inc., the manufacturer of a ribbon deck assembly, to recover for personal injuries he sustained. The jury assessed no fault to any party. Judgment was entered on the jury verdict. The judgment is affirmed.

Mr. Schaedler worked as a pressman for Retail Graphics, Inc., in Kansas City, Missouri. The press assembly with which he worked was a series of machines positioned in a straight line. A single drive shaft powered the press assembly and extended approximately 100 feet, the entire length of the machines. Gaps of four to four and a half feet of rotating drive shaft were observable between machines. The drive shaft was approximately four to four and a half feet above the ground and rotated at approximately 1,300 revolutions per minute. The bottom portion of the drive shaft was uncovered.

Mr. Schaedler's right arm was severely injured when his arm was wrenched and almost severed by a loose drive belt spinning on the drive shaft as Mr. Schaedler attempted to duck under the drive shaft at a gap between machines. Mr. Schaedler was attempting to pass under the drive shaft, following a path routinely used by employees operating the equipment, as he read copy to evaluate the performance of a machine. Mr. Schaedler had placed his right hand above his head as he passed under the drive shaft. The loose drive belt operated the ribbon deck assembly, manufactured by Crosfield–Ebway, Inc., and was hanging to approximately one to one and a half feet above the floor.

Mr. Schaedler submitted his claim on the theory that the press assembly and ribbon deck assembly were in a defective and unreasonably dangerous condition and were being used in a reasonably anticipated manner when the injury occurred. Mr. Schaedler submitted his case against Rockwell Graphic Systems, Inc., utilizing the following instruction:

> In your verdict you must assess a percentage of fault to defendant Rockwell Graphic Systems, Inc. whether or not plaintiff was partly at fault if you believe:
>
> First, defendant Rockwell Graphic Systems, Inc. sold the press assembly in the course of defendant's business, and
>
> Second, the press assembly was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and
>
> Third, the press assembly was used in a manner reasonably anticipated, and
>
> Fourth, such defective condition as existed when the press assembly was sold directly caused or directly contributed to cause damage to plaintiff.

The instruction is based on MAI 25.04. Mr. Schaedler submitted, and the court also gave, a similar verdict directing instruction (Instruction No. 6), for defendant Crosfield–Ebway, Inc., as manufacturer of the ribbon-deck assembly.

The court also gave Instruction No. 7, which states:

> In your verdict you must assess a percentage of fault to plaintiff, whether or

not either defendant was partly at fault, if you believe:

First, plaintiff failed to exercise ordinary care, in either:

passing beneath an unguarded drive shaft with knowledge of a danger involved and with reasonable appreciation of the consequences and the voluntary and unreasonable exposure to said danger, or

failed to appreciate the danger involved in passing under the drive shaft or the consequences thereof and the unreasonable exposure to said danger, or

failed to undertake precautions to protect himself against the danger of passing under the drive shaft.

Second, such conduct of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Instruction No. 7 is based on MAI 37.02 and submits the issue of Mr. Schaedler's comparative fault. *See* § 537.765, RSMo Supp.1990.

The jury returned a verdict assessing no fault to either defendant, Rockwell Graphic System, Inc., or Crosfield–Ebway, Inc. Neither did the jury assess any fault to Mr. Schaedler. The form of verdict was returned as follows:

On the claim of plaintiff Kevin Schaedler for personal injury, we, the undersigned jurors, assess percentages of fault as follows:

| | |
|---|---|
| Defendant Rockwell Graphic Systems, Inc. | 0% |
| Defendant Crosfield–Ebway, Inc. | 0% |
| Plaintiff Kevin Schaedler | 0% |

The trial court entered judgment for defendants pursuant to the verdict, and plaintiff appeals.

Mr. Schaedler argues on appeal, as his sole point, that Instruction No. 7 had no evidentiary support and, when read with the instructions regarding the appraisal of defendants' liability, distorted the definition of "defective condition and unreasonably dangerous," confused the issue of causation and resulted in the jury's prejudicial misdirection of law.

■ Plaintiff's claim of instructional error is not considered. Before reversal can be predicated on instructional error, the complaining party must show that the instruction misdirected the jury, thereby resulting in prejudice. *Lee v. Mirbaha*, 722 S.W.2d 80, 83 (Mo. banc 1986) (citing *Hudson v. Carr*, 668 S.W.2d 68, 71 (Mo. banc 1984)).

■ Mr. Schaedler has failed to show prejudice. Mr. Schaedler acknowledges that in a negligence case, any error contained in a comparative negligence instruction will not be considered prejudicial error if the jury has assessed no fault to the defendant. *See, e.g., Wilson v. Shanks*, 785 S.W.2d 282, 285 (Mo. banc 1990). The court must assume that the jury followed the instructions and, applying the rationale of *Shanks*, when the jury in this case decided the defendants were not liable under the verdict directing instruction, the jury was not required to consider Mr. Schaedler's conduct under the comparative fault instruction. Thus, the comparative fault instruction cannot have prejudiced Mr. Schaedler.

Plaintiff argues, however, that the rule discussed in *Shanks* should not apply in strict liability cases because the issue of plaintiff's behavior is an inextricable factor in determining the issues of defect, whether the product is unreasonably dangerous and causation, all elements in plaintiff's cause for which he bears the burden of proof. However, the Missouri Supreme Court has already applied this rule in a strict liability case. In *Barnes v. Tools & Mach. Builders, Inc.*, 715 S.W.2d 518 (Mo. banc 1986), the court held that the erroneous jury instruction, which utilized negligence concepts in a products liability case, did not negatively influence the properly submitted jury instruction regarding strict liability. *Id.* at 521.

In *Barnes*, the verdict directing instruction for strict liability (Instruction No. 6) was based on MAI 25.04 and began by stating "your verdict must be for plaintiff and you must assess a percentage of fault to defendant if you believe...." *Id.* at 520. The trial court, in *Barnes*, also submitted a separate comparative fault instruction (Instruction No. 8) which began: "You must assess a percentage of fault against the plaintiff if you believe...." *Id.* Instruction No. 8, in *Barnes*, borrowed concepts from MAI 32.23 (contributory fault-strict products liability cases), but also introduced concepts of the plaintiff's negligence. *Id.* The court held that plaintiff's verdict directing instruction for strict liability (Instruction No. 6) could not have been read to require the jury to find that defendant was negligent before the jury could find for the plaintiff. *Id.* at 521. The court noted that the instruction correctly directed the jury that it must assess a percentage of fault against the defendant if it found that the four essential elements of a strict products liability claim had been established, and neither instruction contained a cross-reference to the other. *Id.* The same reasoning applies in the instant case.

■ Nevertheless, Mr. Schaedler argues that even if the *Shanks* rule applies to strict liability cases, the predicates to its application were absent in the instant case. First, Mr. Schaedler contends that application of the *Shanks* rule required that the jury return a "general verdict for defendant," and he argues that the verdict form employed (Verdict A) did not require the jury to reach a verdict for or against any of the parties before it "assess[ed] percentages of fault."

The court rejected a similar argument in *Schisler v. Rotex Punch Co.*, 746 S.W.2d 592, 596 (Mo.App.1988). In *Schisler*, the verdict form was based on MAI 37.07, just like Verdict A in the instant case. *Id.* The plaintiff in *Schisler* attempted to distinguish the verdict form used in *Barnes*. *Id.* The plaintiff argued that the verdict form used in *Schisler*, unlike the verdict form in *Barnes*, did not clearly require that the jury find that the plaintiff failed to prove his product liability claim because the jury was not required to indicate on the verdict form such a finding in favor of either plaintiff or defendants before considering the comparative fault issue. *Id.*

The court, in *Schisler*, held that *Barnes* was decisive. *Id.* The Eastern District held, in *Schisler*, that the difference in the verdict forms did not overcome an inherent finding by the jury that neither defendant was at fault as defined in plaintiff's verdict directing instruction. *Id.* The court's reasoning in *Schisler* applies in the instant case. The court stated:

> [T]he verdict form does not indicate that the verdict was a product of a conclusion by any juror that contributory acts of the plaintiff caused the accident even if the product was unreasonably dangerous when put to a reasonably anticipated use. Just as in *Barnes*, the present verdict directing instruction commanded the jury to return a verdict for plaintiff if it found plaintiff had proven the four elements of his product liability claim "whether or not plaintiff was partly at fault." *Just as in Barnes, we must also assume that the jury in the present case followed the instruction* and would have assessed a percentage of fault against the defendants if it had found that the four hypotheses were established.

*Id.* (emphasis added).

■ Mr. Schaedler also argues that the instructions, which authorized the assessment of percentages of fault to the parties, are clearly dependent upon each other. Application of the rule in *Barnes* requires a plaintiff's verdict directing instruction on strict liability that is "not dependent" on the contributory negligence instruction.

In *Wilson v. Shanks*, 785 S.W.2d at 284, the instructions at issue provided in part:

> Instruction No. 10: "In your verdict on the claim of plaintiff ..., you must assess a percentage of fault to plaintiff ..., whether or not defendant was partly at fault, if you believe...."

> Instruction No. 8: "In your verdict you must assess a percentage of fault to defendant if you believe...."

In holding that there was no prejudice in giving the contributory fault instruction (Instruction No. 10), the court noted that Instruction No. 8 required some assessment of fault to defendant if the jury found the facts hypothesized in Instruction No. 8 to be true, and the assessment of fault was *not dependent* upon, and made no reference to, Instruction No. 10. *Id.* at 285. The commanding language in the instructions at issue in *Shanks* is almost identical to the commanding language in the instructions at issue in the instant case. The verdict directing instructions in the instant case, Instruction Nos. 5 and 6, required some assessment of fault to defendants if the jury found the facts hypothesized to be true. The plaintiff's verdict directing instructions did not refer to, and were not dependent upon, the comparative fault instruction. Plaintiff's point is denied.

The judgment is affirmed.

All concur.